IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2002

## STATE OF TENNESSEE v. FLOYD EARL RAYNER, III

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-589     Seth Norman, Judge**

_____

### No. M2001-00971-CCA-R3-CD - Filed June 19, 2002

_____

The defendant, Floyd Earl Rayner, III appeals from his five convictions of rape of a child and five convictions of aggravated sexual battery, claiming that the trial court (1) failed to fulfill its duty as the "thirteenth juror" and (2) erred in its sentencing determinations by not applying mitigating factors in establishing the length of his sentences and in ordering partial consecutive service of the sentences. Because we hold that the trial court discharged its "thirteenth juror" responsibility and that the sentencing issues have been waived, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Edward S. Ryan, Nashville, Tennessee, for the Appellant, Floyd Earl Rayner, III.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bernard McEvoy and Phil Wheby, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

The defendant was indicted in the Davidson County Criminal Court on five counts of rape of a child, *see* Tenn. Code Ann. § 39-13-522 (1997), and five counts of aggravated sexual battery of a child less than thirteen years of age, *see id.* § 39-13-504(a)(4) (1997). In each count, the victim is M.R.,[1] the defendant's daughter, who was born on June 26, 1987. Each count alleged an offense that was committed on a date between January 1, 1996 and December 9, 1999. The jury convicted the defendant on each count, and the trial court imposed a 21-year sentence in each of the rape-of-a-child convictions and a nine-year sentence in each of the aggravated-sexual-battery

---

[1]     We decline to identify the minor victim by name.

convictions. Two of the rape-of-a-child sentences and one aggravated-sexual-battery sentence were imposed to run consecutively to each other, and all other sentences run concurrently, yielding an effective sentence of 51 years.

In the light most favorable to the state, the evidence introduced at trial showed that the victim is the sole child of the defendant and his wife. The victim is mildly mentally retarded. At the time the offenses commenced, the victim was in the fifth grade, and she was enrolled in resource and life skills classes at school. Academically, she performed at a kindergarten level. She did not know the alphabet, numbers, days of the week, or months of the year. During part of her fifth grade year, she and her parents lived in a car. Later in that school year, they moved into a house on Louis Street in Nashville. During the fifth grade, the victim came to school in filthy clothes and "smelling really bad." Her teacher testified that the victim's body was unclean and beset with hives or scabies sores, and her hair was infested with lice.

By the time M.R. was in the seventh grade, she and her parents had moved to a room at the Music City Motor Inn, an enterprise that catered to a "transient" clientele. She transferred to a different school in Nashville. Although she improved her academic functioning to a first grade level, she remained very limited scholastically and socially, and she continued to come to school unclean and malodorous.

In December 1999, the victim told a family friend that she had been sexually abused. An investigation followed. She was initially removed from her parents' custody because of the filthy living conditions in the motel room; however, the present charges were eventually lodged against the defendant. At the time of trial, the victim's eighth-grade teacher had officially assumed the role of foster parent of the victim.

The victim testified that when her family lived at the location on Louis Street, the defendant "was touching me like over the private parts, like the chest, the front part and behind parts." It happened "[m]ore than one time." She recalled that she was in the fifth grade the first time it happened. On this occasion, she was playing with her "Barbies and . . . toys" when the defendant came into the room and asked her to disrobe and lie on the bed. She complied, lying on her back. She testified that he touched her chest by putting his hand on her and then "his mouth on the middle part," which he "squeeze[d]" with his mouth. Then, he touched her "front private part," opening "the middle of it and then he would like lick it." She felt his mouth on the "inside" of her private part. The defendant "would open the vaseline and he would take . . . four fingers and dip it out and put it all over his private part and put his front part in my behind," although it is unclear from the victim's testimony whether this sexual activity occurred as a part of or on the same day as the "first time it happened." The victim testified that she felt pain when the defendant anally penetrated her and told the defendant to stop.

Without describing a date or related event, the victim then testified that the defendant "would take his private part and like put my hands on it and then he would like open my mouth all

the way open and then he would put his private part inside of my mouth." She testified that his "private part" emitted "clear white stuff."

Describing another occasion without relating it to a specific event or date, she testified that the defendant "would like put his hands on my chest and put his mouth on it and . . . he would . . . open [my private part] and put his tongue on [it] and then he would put his private part in my behind." She testified that this happened more than one time but denied that he ever tried to insert his penis into her vagina. She testified that these events occurred at the Louis Street address when her mother was at work.

The victim then discussed events that occurred when she was in the seventh grade and her family was living at the Music City Motor Inn. She testified that the defendant gave her "bad touch[es]" more than one time. She related that the first time he touched her chest with his hand and mouth and "would like open my private parts, and then he would put his tongue on it." Again, she felt the defendant's mouth "on the inside" of her private part. Then, he "would just put his private part inside my behind." Finally, the victim testified that he would put his private part into her mouth and "like go up and down."[2]

A medical examination of the victim revealed no anomalies in her anal area, but the medical expert opined that the muscular tissue surrounding the anus does not typically show signs of penetration trauma. The vaginal examination was inconclusive as to penetrative activity but revealed that the victim was afflicted with trichomonas, a sexually transmitted disease.

Once, the victim was sexually fondled at school by a male student.

The defendant testified that he worked many long hours at minimum wages to support his family and blamed his wife for not assuring the cleanliness of their home and the good hygiene of the victim. He denied that he ever engaged in any sexual activity with the victim.

I

In his first appellate issue, the defendant claims that the trial court erred in not rejecting the jury's verdict as contrary to the weight of the evidence. The defendant asserts in his brief that "there is no direct evidence that [he] did anything to his daughter." Instead, he claims that he was "convicted by the jury simply because he was poor and his daughter lived in filth."

Pursuant to Tennessee Rule of Criminal Procedure 33(f), the "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." The adoption of Rule 33(f) essentially reinstated in Tennessee the "thirteenth juror rule."

---

[2] We are not given to know from the existing record how the various allegations of sexual assaults correspond to the charges and/or convictions.

*See State v. Nail*, 963 S.W.2d 761, 765 (Tenn. Crim. App. 1997). "Under the thirteenth juror rule, the trial judge has a duty to act as the thirteenth juror to insure that a jury verdict is based upon satisfactory evidence, including that it be presented through sufficiently credible witnesses." *Id.* "The trial judge must be personally satisfied with the verdict." *State v. Dankworth*, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995). The purpose of the rule is to safeguard against a jury's miscarriage of justice. *State v. Moats*, 906 S.W.2d 431, 434-35 (Tenn. 1995); *State v. Price*, 46 S.W.3d 785, 823 (Tenn. Crim. App. 2000), *perm. app. denied* (Tenn. 2001). "Immediately after the trial, the trial court judge is in the same position as the jury to evaluate the credibility of witnesses and assess the weight of the evidence, based upon the live trial proceedings." *State v. Brown*, 53 S.W.3d 264, 274 (Tenn. Crim. App. 2000) (quoting *Moats*, 906 S.W.2d at 434-35), *perm. app. denied* (Tenn. 2001).

The trial court's thirteenth-jury duty is mandatory, *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995), and the court's approval of the jury verdict is a "prerequisite to the entry of a valid judgment," *Nail*, 963 S.W.2d at 765.

That said, the thirteenth-juror rule "does not require an explicit statement on the record that the trial court performed its duty." *Brown*, 53 S.W.3d at 274. When a trial judge overrules a motion for new trial and says nothing to express dissatisfaction with the verdict, we "assume that the judge has exercised the mandatory thirteenth juror function and is satisfied with the jury verdict." *Dankworth*, 919 S.W.2d at 57.

The appellate court has "no independent authority to act as a thirteenth juror." *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). We are "effectively precluded from reevaluating or reweighing the evidence" and are "practically foreclose[d from assessing] the evidentiary basis for a trial court's thirteenth juror ruling." *Id.* Accordingly, when the trial court makes its thirteenth-juror determination, we do not review it. *Dankworth*, 919 S.W.2d at159. "[T]he appellate court's duty is limited to a review of whether the [thirteenth juror] obligation was discharged." *Id.*

In the present case, the trial judge not only overruled the motion for new trial, he said, "I'm satisfied with the jury's verdict in this matter. I will respectfully overrule [the] motion." Thus, based upon these statements, the trial court discharged its duties pursuant to Rule 33(f). The defendant is entitled to no relief.

II

The defendant's second and third issues are complaints about the trial court's sentencing. First, the defendant claims the trial court erred in rejecting his claims for sentence mitigation. Prior to sentencing, the defendant proposed in writing that the court mitigate the sentences based upon the claim that his conduct neither caused nor threatened serious bodily injury and his lack of significant prior criminal history. *See* Tenn. Code Ann. § 40-35-113(1), (13) (1997). The trial court declined to apply either factor. Second, he complains that the trial court erred in ordering consecutive service of some of his sentences. The trial court imposed consecutive

sentences based upon the defendant being convicted of offenses involving sexual abuse of a minor and his commission of the present offenses while he was on probation. *See id.* § 40-35-115(a)(5), (6) (1997).

The sentencing law mandates that this court review sentencing determinations *de novo* with the presumption that the lower court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (1997); *see State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991) (presumption of correctness conditioned upon "affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances")**.** On appeal, the appellant bears the burden of showing that the sentence is improper. *Ashby*, 823 S.W.2d at 169.

In noncapital felony sentencing when the sentence is not arranged by agreement, the trial court "shall . . . direct the presentence service officer to make a presentence investigation and report. . . ." Tenn. Code Ann. § 40-35-205(a) (Supp. 2001). "The presentence report shall be filed with the clerk of the court . . . ." *Id.* § 40-35-208 (1997). To determine the appropriate sentence, the trial court is required to consider several sources of information, including the presentence report. *Id.* § 40-35-210(b)(2) (Supp. 2001). "A sentence must be based on evidence in the record of the trial, the sentencing hearing, *the presentence report*, and[] the record of prior felony convictions filed by the district attorney general with the court . . . ." *Id.* § 40-35-210(g) (emphasis added).

At this juncture, we must conclude that the defendant has waived our review of his sentencing claims. Despite the mandate of our sentencing law that a presentence report be filed with and considered by the court and that this court review sentencing determinations *de novo* upon the record that should include the presentence report, the record before us contains no such report. The record reflects that a report was prepared and submitted to the trial court, but the defendant, as the appellant, has failed to include this important component of the sentencing record in the record on appeal. In this situation, we cannot discharge our function of *de novo* review of the trial court's sentencing determinations. *See State v. Richard Douglas Lowery*, No. 03C01-9604-CC-00146, slip op. at 8 (Tenn. Crim. App., Knoxville, May 19, 1997).

The appellant bears the burden of not only showing on appeal that the sentence is improper, *Ashby*, 823 S.W.2d at 169, but also he is burdened with the responsibility of assuring that the appellate record contains "a full, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," *see* Tenn. R. App. P. 24(a), (b). In the absence of such a record, we must presume that "the trial court's rulings were supported by sufficient evidence." *Id. State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

This presumption is especially apt in a case such as the one before us. In the sentencing hearing, the state relied primarily upon the presentence report that had been prepared and submitted to the trial court. It called no live witnesses to testify. Yet, the defendant, as the appellant, has failed to assure the inclusion of this report in the appellate record, despite that he raises issues which a presentence report typically addresses. He complains that the trial court should have mitigated his sentence because he did not cause or threaten serious bodily injury, which includes the

"substantial impairment of . . . a mental faculty" of the victim.  *See* Tenn. Code Ann. § 39-11-106(a)(34) (1997); *see also id.* § 40-35-207(a)(8) (1997) (presentence report shall include "[a]ny statement relating to sentencing submitted by the victim of the offense or the investigative agency"); *id.* § 40-38-205 (1997) (presentence report shall include "victim impact statement" as submitted by the victim or the victim's representative to reflect "the financial, emotional, and physical effects of the crime on the victim").  In a similar vein, he complains that the trial court erred in imposing consecutive sentences pursuant to Code section 40-35-115(b)(5), a rubric for authorizing consecutive sentences in cases of "sexual abuse of a minor" in which the court is required to consider, *inter alia*, "the extent of the residual, physical and mental damage to the victim." *Id*. § 40-35-115(b)(5) (1997).  Again, the presentence report typically addresses such issues, and a victim impact statement would have been particularly instructive in making the section -115(b)(5) determinations.

In conclusion, we find no reversible error and affirm the trial court's judgments.


_____
JAMES CURWOOD WITT, JR., JUDGE